THE ALBANY NORTHERN RAILROAD COMPANY v. BROWN‡ ELL et al.

A highway cannot be laid out over grounds acquired by a railroad corporation for the site of an engine-house, &c., necessary for its use at a station.

An injunction suit will lie to restrain highway commissioners from taking possession of such a site.

It seems that an injunction suit will not lie in a case where the commissioners would have the right to lay out a highway, but fail to acquire jurisdiction, or where their proceedings were irregular.

The statute (ch. 62 of 1853), in authorizing the construction of highways across railroad tracks without compensation, does not violate the constitutional provisions against taking private property for public use or impairing the obligation of contracts.

The title which a railroad corporation acquires to its track is qualified as being taken for public use, and is subject to the exercise by the legislature of all the powers to which the franchises of the corporation are subject.

APPEAL from the Supreme Court. Action in the nature of a bill in equity, to restrain the defendants, as commissioners of highways of the town of Hoosick, from opening an alleged highway across the plaintiffs' track, and side track and grounds, at their station at Buskirk's Bridge, in that town; and to have the proceedings for laying out the highway adjudged to be illegal and void. The case was tried before one of the justices of the Supreme Court, without a jury, in October, 1855. It appeared that the plaintiffs' corporation was established, under the general railroad act, to construct a railroad from Albany to Eagle Bridge, in Rensselaer county; that the Company, in February, 1853, acquired title to an irregular piece of land at the Buskirk Bridge station on which

to lay their track, and also for the accommodation of a station-house, and for a side track connected with the main track by turn-outs and switches, and also for a turn-table or Y, upon which to change the direction of their engines and cars, and for other conveniences for the operation of their road.

In June, 1854, application was made to the defendants and another commissioner of highways, who afterwards resigned, to lay out a highway across the railroad track, the side track and grounds, which resulted in the laying out of the highway applied for, by an order signed by the three commissioners on the 15th July following. The plaintiffs alleged that the proceedings were irregular, because the oath to the freeholders, who were called upon to pass upon the application, was administered by Mr. Brownell, one of the commissioners, instead of a justice of the peace or other magistrate, and also because, as alleged, no notice of the meeting of the commissioners, to decide whether they would lay out the road, was given to the plaintiffs or the proprietors of the railroad. In point of fact, a written notice of the meeting, signed by the commissioners, was served upon the assistant treasurer of the Company, which came to the knowledge of the president and the treasurer and of the attorneys of the corporation, one of whom, with the assent of the other, who was the treasurer, and the knowledge of the president, attended before the commissioners on the day mentioned, and argued against the legality of the proposed highway; but his instructions were, not formally to appear on behalf of the corporation, but only to look on and see what was going forward, and he testified that he did not act on behalf of the Company.

The highway, as laid out, after passing over the two tracks, occupied a portion of the ground to which the Company had acquired title, suitable for the site of an engine-house, which structure had not then been built, but on which, after the road was laid out and this controversy had arisen, such a building was erected, occupying the entire width of the highway, and it was connected with the turn-table by another side track.

The plaintiffs neglected to open the road across the track,

pursuant to the statute, though the commissioners gave them notice to do so, and thereupon the commissioners entered upon the premises, took down the railroad fences, and attempted to construct the highway across the tracks and grounds; but they were resisted by the plaintiffs' agents, who excluded them from the premises and put up the fences.

The Company had executed a mortgage to trustees to secure their construction bonds to a large amount, and at the time of laying out the road, and since, the trustees were in possession, as receivers, under an order of the Supreme Court, made in an action to foreclose the mortgage; and they were made parties, with the corporation, as plaintiffs in this suit.

The testimony tended strongly to show that an engine-house at this point was necessary, and that there was no convenient site for one on the land which the Company had acquired, except the place on which it was subsequently erected.

At the close of the testimony, the judge directed a judgment for the plaintiffs for the relief claimed.

The judgment entered, and affirmed on appeal at the general term in the third district, was, that the defendants be enjoined from laying out the highway across the plaintiffs' premises, and the proceedings by which it was claimed to have been laid out were declared null and void; and the defendants were adjudged to pay costs. They appealed to this court.

*William A. Beach,* for the appellants.

*Orlando Meads,* for the respondents.

DENIO, J. I am of opinion, in the first place, that the plaintiffs were not entitled to relief, on account of the alleged irregularities in laying out the road. If they were such as to deprive the commissioners of highways of jurisdiction, as is argued by the plaintiffs' counsel, still an injunction was not a proper remedy. It may be that, upon the facts proved, the order of the commissioners in laying out the road would be void, and that all persons acting under their orders in opening

it would be trespassers. But the defect would be simply one of form, which might be remedied by a new proceeding, and would not involve any question of permanent right. The entry upon the track of the road for the purpose of opening it would be simply a trespass, commenced under color of a right acquired by the proceedings of the commissioners of highways. The ordinary remedy for the redress of such a grievance is a common action at law; and, without some extraordinary feature, a court of equity would have no jurisdiction of the case. The remedy by injunction is one of the instrumentalities by which courts of equity administered justice in cases within its jurisdiction; and now, since legal and equitable proceedings are blended, a party, to entitle himself to that remedy, must establish what under the former practice would have been an equitable cause of action. In certain cases an injunction might be obtained to prevent a trespass; but the case must be brought within some acknowledged head of equity jurisdiction. A suit in chancery would often lie to quiet the plaintiff's title to land, but this was only where the law did not afford adequate protection, as where the adverse proceeding was under a statute which made the record presumptive evidence, or the like. (*Scott* v. *Onderdonk*, 14 N. Y., 9.) So where a resort to equity was necessary to prevent a multiplicity of suits, or to settle a question of property claimed under a statute; but it is settled that, in such a case, the plaintiff must first have prevailed upon the trial of some of the suits. (*West* v. *The Mayor, &c., of New York*, 10 Paige, 539; *Eldridge* v. *Hill*, 2 John. Ch., 281.) If, then, the present were a case in which the commissioners of highways of Hoosick had a right to lay out and open a highway across the plaintiff's premises, provided they followed accurately the directions of the statute, a suit for an injunction and for a judgment declaring the order void would not lie upon the allegation that their proceedings were irregular, or even that, by a defect of form, they had failed to acquire jurisdiction in the particular case. There is no reason to doubt that a single recovery of damages in an action at law, or the failure to recover in a single suit brought against the

agents of the plaintiff, would effectually settle the controversy. A bill for an injunction was never maintainable in such cases.

I am of opinion that the act of 1853 (ch. 62) applies to the case; that it authorized the town authorities to lay out the highway across both tracks of the plaintiff's railroad, and that the statute is not hostile to any provision of the Constitution. In terms, it authorizes the laying out of a highway across the track of a railroad; but, if there are two tracks parallel with and near each other, at the.point where the highway is to cross, it must pass over both, or it cannot be laid at all. It is within the language of the act; for at each crossing it passes over the track of a railroad. There was, therefore, no objection, I think, to crossing the side track. But the statute declares that the highway may be laid across the track without compensation to the corporation owning the railroad. This, it is argued, is repugnant to the Constitution, as the taking of private property for the use of the public without recompensing the owner. Upon this my opinion is, that the railroad companies under the general act do not acquire the same unqualified title and right of disposition, to the real estate taken for the road and paid for according to the act, which individuals have in their lands. The statute declares the effect of the proceedings which it authorizes to be, that the company "shall be entitled to enter upon, take possession of, and use the said land *for the purposes of its incorporation* during the continuance of its corporate existence;" and it further declares that the land which it thus appropriates shall be deemed to be acquired for public use. The title to the land being thus limited to its use for the purposes of the railroad enterprise, it is necessarily subject to the exercise of all those powers reserved to the legislature to which the franchises of the corporation are subject. If the latter can be restricted or modified by subsequent legislation, the uses to which the land which the corporation has acquired may be changed by the same authority. It has long been the policy of the legislature to qualify corporate franchises in such a manner as to render them subject to the control of the law-making power. For

this purpose the Revised Statutes provided that the charter of every corporation which should thereafter be granted by the legislature should be subject to alteration, suspension or repeal at its discretion. (1 R. S., p. 600, § 8.) Perhaps this provision would apply to corporations created under general laws, which, though not granted specifically and directly by the legislature, are, nevertheless, emanations from the legislative power. But the general railroad act itself provides that the corporations formed under it may be annulled or dissolved at any time by the legislature. (Laws, 1850, p. 234, § 48.) The effect of this and similar provisions has frequently been before us; and we have held that, under the reserved power, the legislature might interfere in many important respects with the powers of corporations, by subjecting them to new restrictions or increased burdens. We have held, for instance, that the line of a plank-road might be extended and its capital increased, and that the same thing might be done in respect to a railroad corporation created under a special enabling act; and that a banking corporation, chartered under the general act of 1838, without personal liability of the shareholders, might be so changed as that they should be liable for all the debts of the company to an amount equal to the stock held by them respectively. (*Schen. & Sar. Plankroad Co.* v. *Thatcher*, 1 Kern., 102; *The Buffalo, &c., R. R. Co.* v. *Dudley*, 4 id., 336; *In the matter of Oliver Lee & Co.'s Bank*, 21 N. Y., 9.) The change effected in the present case is of slight importance, compared with those which were upheld in the instances referred to. A railroad laid out upon or near the natural surface of the earth may be crossed, without material inconvenience, by a common highway, on the same grade with the railroad track. The property of the railroad is not taken away from the proprietors, who are still allowed to use it for all the purposes for which it was acquired from the original owner. Nor is there anything unlawful in obliging the railroad company to make the necessary excavations or embankments for taking the highway across the railroad. The disturbance of the surface of the

ground, which has rendered such work necessary, was effected by the railroad itself; and the reservation of legislative authority we may suppose to have been inserted for the purpose of obliging the companies to conform to such directions as subsequent legislatures should discover to be necessary for the public good, or which should be required by public policy. The difficulties which arose out of the rule that the grant of corporate power for individual emolument created a contract between the corporators and the State, led to the reservation referred to; and this case presents a strong illustration of the wisdom of the legislative policy. The case of *Miller* v. *The New York and Erie Railroad Company* (21 Barb., 513) was adjudged in hostility to these principles, and I think it cannot be sustained.

But the highway was laid out, not only across the track of the railroad and the land acquired by the corporation for the purpose of locating the track, but across the grounds which they had acquired as sites of their station-house, engine-house, turn-table, &c.; and no provision was made for compensation. The act of 1853 does not, in language or by any necessary implication, extend to an appropriation of such land to the purposes of a highway, and it does not fall within the policy which contemplated that the track of the railroad might be so used. The use of the land acquired by the railroad company for its track was such as admitted of a concurrent use for the purposes of a highway; but it was quite otherwise with that which was obtained for the engine-house and other structures. As to this, the uses to which it was to be subjected were the same as those which any proprietor of land may be supposed to have for premises purchased by him for building purposes. To run a highway through such grounds is to appropriate the portion covered by it exclusively for a public use. Moreover, such land falls within the denomination of improved land, through which a highway cannot be laid out without an obligation to make compensation. (1 R. S., p. 514, §§ 58–64.) But, admitting that the failure to make compensation, though it would render the appropriation illegal, would not raise such a question as to

bring the case within the scope of equitable jurisdiction (as to which I express no opinion), there is still another question, whether the commissioners had any power whatever to lay out the highway over such portions of the land of this company as might be needed for the site of their engine-house. I shall assume that the place where that structure was eventually erected was the only position on the land of the company where it could have been placed, and that such a building was a necessary accommodation for the company at that station, and one of the objects for which the land was required. These are questions of fact, which ought to have been found one way or the other by the judge. There being evidence respecting them, we must assume that they were in fact determined by the judge in a manner favorable to the decision which he made. The question is, then, presented, whether, when a railroad company has acquired the title of a piece of land for the site of a building necessary for its business, the local authorities can occupy the ground for a highway, and thus prevent the company from erecting the proposed building. I am of opinion that it cannot be lawfully done. The 57th section of the title of the Revised Statutes on this subject forbids the laying out of a highway through any buildings, or any yards or inclosures necessary to the use and enjoyment thereof. (1 R. S., 514; and see *Ex parte Clapper*, 3 Hill, 458.) Before this highway was laid out, the railroad company had established their station at this place, and had erected the station-house. To the completion of their arrangements for a railroad station, it was essential that they should also have an engine-house and a turn-table. The remainder of the land—no more having been acquired than was needful—may well be considered as an inclosure necessary for the enjoyment of the building already erected, namely, the station-house. The necessity of having the engine-house on that spot, and the consideration that it could not be erected elsewhere, shows that the land on which it stood was necessary for the enjoyment of such of the other station buildings as had already been completed.

For the disturbance of such an interest as this, under a claim of a right of permanent occupancy, I am of opinion that a suit for an injunction would lie to establish and quiet the plaintiffs' title to the enjoyment of their premises for the purposes for which they were acquired and appropriated. The case seems to be within the principle of *The Mohawk and Hudson River Railroad Company* v. *Artcher* (6 Paige, 87), and the two cases therein cited.

It follows from these suggestions that the judgment ought to be affirmed.

SELDEN, Ch. J., and WRIGHT, J., expressed no opinion; all the other judges concurring,

Judgment affirmed.