## SAUER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONSTRUCTION OF VIADUCT—DAMAGES—LIABILITY OF MUNICIPALITY.

   A city is liable to an abutting owner for damages caused by the erection of a viaduct in the street in front of his premises, by which he is deprived of his easements of light, air, and access appurtenant thereto.

2. SAME—PLEADINGS—AMENDMENTS.

   In an action against a city for damages caused by the erection of a viaduct in the street in front of plaintiff's premises, amendments of the complaint, at the trial, striking out causes of action for damages to the fee and for negligence, and amplifying the cause of action for damages to the usable value of the premises, are permissible under Code Civ. Proc. § 723, allowing pleadings to be amended at any stage in furtherance of justice.

3. SAME—MEASURE OF DAMAGES—EVIDENCE.

   Where the plaintiff claims damages to the usable value of his premises, caused by the erection of a viaduct which deprives him of his easements of light, air, and access, it is error to admit testimony as to the profits of his business prior to the construction, and the losses sustained thereafter, as too speculative.

Appeal from trial term, New York county.

Action by George W. Sauer against the mayor, aldermen, and commonalty of the city of New York. From a judgment entered on a verdict, and an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellants.
Edward C. James, for respondent.

McLAUGHLIN, J. The city of New York in 1890 commenced to construct, and in 1893 completed, a viaduct extending from St. Nicholas avenue through 155th street to a bridge over the Harlem river. The plaintiff owned certain property situated on 155th street, in front of which the viaduct passes, and this action was brought to recover the sum of $90,000 damages alleged to have been sustained by him, upon the ground that the construction and operation of the viaduct diminished the easements of light, air, and access appurtenant to and connected with his property. The complaint contained four separate causes of action: (1) Damages to the fee and to the rental value of the premises; (2) damages to plaintiff's business conducted thereon; (3) damages caused by the negligence of the city in excavating for the viaduct; and (4) dam-

ages for negligence of the city, resulting in the bursting of a water meter. At the trial the complaint was amended by striking out the claim for damages to the fee and for negligence, and after such amendment the trial court held that only one cause of action was alleged, namely, for damages to the value of the use and occupation of the premises from the commencement of the construction of the viaduct to the commencement of the action. Both parties were apparently satisfied with the construction thus put upon the complaint, because neither of them excepted to the ruling; and the trial proceeded, and the issues were finally submitted to the jury upon that theory, the learned trial justice stating to the jury, at the request of the defendant's counsel, "This action is limited to rental damages which occurred, if at all, prior to November 10, 1896," and that by rental damages he meant the loss of "usable value." The jury rendered a verdict in favor of the plaintiff for $30,000, and from the judgment entered thereon and from the order denying a motion for a new trial the defendant has appealed. It asks for a reversal of the judgment principally upon the grounds: (1) That an action of this character cannot be maintained against the city; (2) that the court erred in permitting the complaint to be amended at the trial, and in not dismissing it as to the second cause of action alleged; and (3) that the court erred in receiving, against the defendant's objection, testimony tending to establish the profits of the plaintiff's business conducted upon the premises for a term of years immediately preceding the construction of the viaduct, and that for a number of years following its construction he had sustained a loss.

As to the first ground of error alleged, we think it cannot be seriously questioned but that the city is liable to an abutting owner for whatever damage it may cause to him by the erection of a permanent structure in a public street immediately in front of and adjoining his property, which deprives him of the easements of light, air, and access appurtenant to and connected therewith. Easements of this character are property (Kane v. Railroad Co., 125 N. Y. 164, 26 N. E. 278), and property cannot be taken from the owner "for a public use without just compensation" (Const. art. 1, § 6). The right to maintain an action to recover damages for the invasion of the owner's rights by the city in this way is in all respects analogous to the elevated railroad cases, and we think the principle there applied must be applied here against the city. The construction of the viaduct was something more than a mere change of the grade of the street. Manhattan Ry. Co. v. City of New York, 89 Hun, 429, 35 N. Y. Supp. 505. It was the appropriation of the street itself in such a way that the plaintiff was deprived of his property for which the city must pay a just compensation.

Neither do we think it can be seriously questioned but that the trial court had the power to permit the complaint to be amended by striking out the cause of action for damages to the fee and also for negligence, and to permit the cause of action for damages to the use and occupation to be more fully and amply stated. Code Civ. Proc. § 723. No counterclaims had been interposed by the de-

fendant, and the plaintiff therefore had the right, with the consent of the court, at any time before the case was finally submitted to the jury, to withdraw from their consideration any or all of the causes of action alleged. The amendment did not introduce a new cause of action. All that it did was to omit the claim for fee damages and for negligence, and to amplify or state more fully the claim for damages to the rental value. The court so held at the time the amendment was made, and also held that the only recovery which could be had was for damages to the use and occupation, and that but a single cause of action was alleged in the complaint as amended. The defendant acquiesced in these rulings, and took no exception to them. It is clear, therefore, that the court correctly denied the motion made by defendant at the close of the trial to compel plaintiff to elect upon which cause of action he would ask a verdict, and also correctly denied the motion to strike out all evidence offered as to the second cause of action. Under the previous rulings, there was but one cause of action alleged in the complaint. The trial had proceeded upon that theory, and the evidence which had been admitted was directed to that one issue.

This brings us to the consideration of the remaining question, which is a much more serious one, and that is whether testimony was properly admitted as to the profits which the plaintiff had made in his business prior to the construction of the viaduct and the losses which he had sustained thereafter. The plaintiff himself was sworn, and asked the following questions: "Q. Will you tell me what your annual profits were from these premises in the use and occupation of business as you carried it on during the years before the viaduct? State what it averaged annually;" and "Q. After the viaduct came there, what did your annual profits from the use and occupation of the business there average, if anything?" Both questions were objected to by the defendant upon the ground that they were irrelevant, incompetent, and immaterial, and called for an improper measure of damages, which objections were overruled, and an exception taken in each instance. The witness answered that during the four years immediately preceding the construction of the viaduct his profits averaged about $15,000 per year, and that since its construction he had lost money each year in his business. One of plaintiff's witnesses was also permitted, against the defendant's objection, to give testimony of a similar character. We think this testimony was improperly admitted. The profits of a business are too uncertain, and depend upon too many contingencies, to safely be accepted as any evidence of the usable value of the property upon which the business is carried on. Profits depend upon the times, the amount of capital invested, the social, religious, and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit, another might only do at a loss. That the plaintiff had made profits in his business in the past was no indication that he would continue to make them in the future, even had the viaduct not been constructed. This testimony being inadmissible, the defendant's objections thereto should have been sustained. In re

Gilroy, 26 App. Div. 314, 49 N. Y. Supp. 798; Masterton v. Village of Mt. Vernon, 58 N. Y. 391; Newton v. Armstrong (Sup.) 19 N. Y. Supp. 573; Edmands v. City of Boston, 108 Mass. 535; Cobb v. City of Boston, 109 Mass. 438; Becker v. Railroad Co., 177 Pa. St. 252, 35 Atl. 617. In Re Gilroy, supra, the court said:

"On the hearing before the commissioners the appellant sought to prove the profits they made in their business during a term of years. This testimony was rejected, we think, properly. It is doubtless competent for the landowner to prove the value of the land taken from him for any purpose for which it may properly be used, and he is entitled to that value, even though he may put the property to a different use. It was, of course, competent to show that the property was used for business purposes, and was suitable for such purposes, for, as a rule, business property demands a higher price than property used merely for the purpose of residence. It was also competent to show the general character of the business, for property desirable or available for business of a certain character might command higher prices than property only suitable for business of another character; but the profits the occupants had realized from the business carried on upon the property do not tend to show the value of the property itself. * * * The profits of the business would naturally depend far more largely upon the judgment, forethought, and business skill of the appellants, and the use of their capital, and the condition of trade, than upon the value or location of the particular property upon which the business was conducted."

But it is unnecessary to further consider the subject. The testimony was inadmissible, and could not be used for the purpose intended. It was just the kind of evidence to injure the defendant by taking the minds of the jury from the real fact to be ascertained, namely, the damages to the usable value; and that it did injure the defendant is evidenced by the verdict itself.

It follows that for the error thus committed the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

