(44 Misc. Rep. 536.)

INTERBOROUGH RAPID TRANSIT CO. v. GALLAGHER et al.

(Supreme Court, Special Term, New York County. July, 1904.)

1. ELEVATED ROAD—RIGHTS IN STREETS.

Plaintiff was the owner of a franchise to operate an elevated street railway in certain streets of a city. Held, that it did not acquire the fee of any part of the street, but only an easement for the support of its columns and structure.

2. SAME—RIGHTS OF CITY.

Where an elevated road has acquired a franchise for the use of certain streets, the city still retains the right to make use of the street for proper purposes, and is not compelled to consult the convenience of the railroad company in such use, but can only be required not to unreasonably interfere with the structure of the elevated road.

3. SAME—INJUNCTION—IMPROVEMENTS IN STREET.

A city, under authority conferred by its charter, was about to erect a public comfort station in a street, which rendered it necessary to underpin three of the pillars of an elevated railroad, at an expense not exceeding $2,000. Held, that the railroad company, on refusal of the city contractor to allow it to perform the work of the underpinning at the contractor's expense, is not entitled to enjoin the erection of such station.

4. SAME—REMEDY AT LAW.

Where a city, by its use of a street, requires an elevated road to place underpinning under three of its pillars if the expense should be borne by the city, the railroad company, after doing the work, has an adequate remedy at law against the city, so that an injunction will not be granted.

Action by the Interborough Rapid Transit Company against Patrick Gallagher and the city of New York. Motion for injunction. Denied. See 89 N. Y. Supp. 152.

Charles A. Gardiner, for plaintiff.

Straley, Hasbrouck & Schloeder, for defendant Gallagher.

John J. Delany, Corp. Counsel (Charles L. Guy, of counsel), for defendant city of New York.

SCOTT, J. The affidavits and documents of various kinds read upon the motion are most voluminous, but the material and important facts are simple, and for the most part undisputed. The plaintiff is the owner of a franchise to maintain and operate an elevated street railway over certain streets and avenues in the city of New York, including a public place known as "Chatham Square." The plaintiff's structure at this place is upheld by iron columns, resting in the roadway, each of which is sustained by a masonry foundation about seven feet in depth, imbedded in and beneath the surface of the street. The city of New York, by the defendant Gallagher, a contractor, is erecting under the surface of said Chatham Square and in part under plaintiff's elevated railway structure, a so-called "public comfort station," said structure being specially authorized by the charter of the city, the particular location being left to the discretion of certain municipal authorities. Without going into the particulars of the physical conditions thus created, it suffices for the purposes of this motion to say that the effect of excavating for the public comfort station is to render it necessary, for the assured safety of plaintiff's structure, that three of the pillars supporting the structure should be underpinned or permanently shored up. The relief asked for by this motion is that the defendants be restrained from further proceeding with the work of constructing the public comfort station, although the weight of the evidence appears to be that the point of most imminent danger has now been passed, and that from now on, if defendants are permitted to proceed with the work, the danger will grow gradually less, yet that absolute safety to the plaintiff's structure and to the traveling public will still require that the shoring up or underpinning be done. The real controversy is as to who shall do the work, and who shall bear the cost, which, according to the largest estimate put upon it, will not much exceed $2,000. The plaintiff's position is that it alone can do the work of shoring up properly, and that it should be allowed to do it in its own way, and under direction of its own engineers, without regard to cost, but at the expense of the defendant Gallagher; and it has resorted to every available expedient, including actual physical force, to prevent Gallagher from undertaking to do the work of permanently underpinning the columns. A similar motion for the same relief was made to another justice of this court, and denied by him, an appeal from his order having been taken and being now pending in the Appellate Division. A comparison of the papers used on that motion and those now before me fails to disclose any substantial or material difference in the questions involved, or in the facts presented, except that the actual imminent danger appears to be less now than it was then represented to be. The present motion might, therefore, well be denied upon the ground that it is substantially

the renewal, without leave, of a motion already denied. It may not be out of place, however, to indicate briefly the reasons which suggest themselves why, even as an original proposition, the injunction should not continue. The plaintiff's position appears to be based upon an exaggerated and erroneous idea of the rights in the public highway which it acquired under its charter. Undoubtedly, it did acquire certain rights of which it may not be deprived. To precisely define and limit the character and extent of those rights is not easy, and in the present case not necessary. It may be said generally that it acquired a right, somewhat in the nature of an easement, for the support of its columns and structure, but it owns no fee in the street and no exclusive right to the use and occupancy thereof. The most that the plaintiff has the right to insist upon is that its structure shall not be unreasonably interfered with. Notwithstanding plaintiff's charter, the city has still the right to make use of the streets for proper and authorized urban purposes, and is not obliged to consult the mere convenience of the plaintiff, nor to study to save it from expense to the detriment of the public. Western Union Tel. Co. v. Syracuse El. L. & P. Co., 178 N. Y. 325, 331, 70 N. E. 866. Undoubtedly the city would not have the right to undertake any work which would destroy the plaintiff's structure, or render its use so dangerous that it must be abandoned, but no such question is presented here, because all parties agree that the structure can readily be rendered safe at a not immoderate expense. Under a very similar state of facts it was held by the Appellate Division in the Second Department that the obligation rested upon the railway company to bear the expense of protecting its own structure. Brooklyn El. R. R. Co. v. City of Brooklyn, 2 App. Div. 98, 37 N. Y. Supp. 560. It would serve no good purpose to quote, or to attempt to paraphrase, the satisfactory reasoning by which the court arrived at that result. It is true that the excavation in that case was for a sewer, while in the present case it is a different, and in a sense more modern, at least so far as this city is concerned—public utility; but it is not different in its practical results, and not "of such a character as to destroy, practically, the plaintiff's franchise and property." The case of Manhattan R. Co. v. Mayor, 89 Hun, 429, 35 N. Y. Supp. 505, much relied upon by plaintiff, does not help its application for an injunction, but, on the contrary, if it be applicable to the facts of the present case, serves only to demonstrate that an injunction is unnecessary, since adequate redress can be had at law. It appears from the papers presented that the work contracted for by the defendant Gallagher, the lines and limits of which were selected and laid down for him by the officers of the city, was of such a nature that it must of necessity imperil the safety of the plaintiff's structure. The city must, therefore, as between it and plaintiff, assume whatever responsibility may follow upon the execution of the contract. It was doubtless in view of this responsibility on the part of the city that it caused to be inserted in the contract a clause known as "section 19½," whereby the contractor, Gallagher, covenanted with the city that he would protect the plaintiff's structure during the performance of his contract, and make good any damage he might do. The financial ability of the city to respond in damages is not to be questioned, and I do not understand that any question is made as to the contractor's

solvency. The structure can easily be made safe, and at a moderate cost. The defendants have offered and now offer no obstacle or impediment to prevent the plaintiff from shoring up or underpinning the columns. The weight of authority, in my opinion, is to the effect that under the circumstances disclosed by the affidavits and plans it is the plaintiff's duty to protect its structure at its own expense. If this be so, of course no injunction should issue. If, on the other hand, it should ultimately be determined that plaintiff was entitled to have its structure protected by the defendants, or either of them, an action for damages would lie. In such an action it would doubtless be necessary to prove that Gallagher's plans were inadequate, that plaintiff's plans were the only adequate ones, and that the expense of carrying out the plans was reasonable. The plaintiff professes to be able to show all this, and attempts to do so on this motion. It should therefore have no difficulty in proving these facts upon a trial. It appears, therefore, that if, by reason of the denial of the injunction, the plaintiff is driven to do the work itself, on its own plans, and, in the first instance, at its own expense, it will suffer no prejudice in the end.

Motion denied with $10 costs to each defendant.