Ingraham, J.
Prior to the year 1875 the city of Hew York had acquired, under certain condemnation proceedings instituted under the act of 1813, the fee of Third avenue, which it held in trust for use as a public street. As a municipal corporation, the city of Hew York also owned in fee the property abutting on the westerly side of Third avenue, between Sixty-seventh, and Sixty-eighth streets.
On June 18, 1875, an act of the legislature known as the rapid transit act was passed.' By that act a system was established under the provisions of which authority could be acquired to construct elevated railroads over public streets and highways, and it was provided in that act that the use of the streets, avenues, places and lands authorized to be used for the purposes of such highway should be considered, and was thereby declared to be, a public use consistent with the uses for which the streets, roads, avenues and public places were publicly held.
That act also contained a provision which required as a condition for the construction of any elevated railroad under the authority thereby granted, that the consent of the local authorities having the control of that portion of the street or highway upon which it is proposed to construct or operate such railway or railways be first obtained.
In pursuance of the provisions of that act the defendant, the Hew York Elevated Railroad Company, was authorized to construct an elevated railroad in Third avenue, between Sixty-seventh and Sixty-eighth streets, and on September 7, 1875, the common council of the city of Hew York duly adopted and the mayor duly approved the following resolution:
“ Resolved, that this board, on behalf of the corporate authorities of the city of Hew York, hereby gives its consent to the routes adopted by the commissioners on rapid transit as contained in the report of the said commissioners transmitted to the board this day.”
*568 Acting under the authority thus granted by the corporate authorities, the defendant, constructed its railroad in Third avenue, between Sixty-seventh and Sixty-eighth streets. Subsequently, in the year 1885, the mayor, aldermen and commonalty of the City of New York conveyed to the plaintiff’s grantor the premises described in the complaint in this action, abutting on Third avenue, and the plaintiff now brings this action, alleging that she acquired, by virtue of the grant from the city of New York to her grantor, 'and by the grant from her grantors to herself, an easement in Third avenue which has been appropriated by defendant in the construction and operation of its railroad, and asks for an injunction to restrain the defendants from trespassing upon or appropriating such easement. And the question that meets us on the threshold of this case is whether the consent given by the city of New York to the defendant to construct its road in Third avenue did not grant to this railroad company its right in Third avenue as abutting owner as well as its right and interest as owner of the fee of the street.
The city of New York, as a municipal corporation, held all of the property which it owned for public use. It held the fee of the street for a specific public use, viz.: that of a public street, and it had no authority, except by consent of the legislature, to appropriate any of the property held in trust to be used as a street for any purpose except a street use, but all the property that was vested in the corporation was corporate property, and could not be applied to any use except corporate use without the consent of the legislature. The legislature, however, had power to authorize the municipal authorities to consent to the use of its property for any public use, and for such purpose it had power to declare what should be a public use.
It had power, therefore, to declare that the elevated railroad should be deemed a public use, and to authorize the corporate authorities to devote any of the property that it held, whether in trust for public streets or for the general municipal purposes, to the use of such railroad, and when, acting under such authority, the corporation granted the right to use any of its property for the construction of such railroad, and the railroad company acted upon such consent and built its road, the right to use such property so devoted for the railroad vested absolutely and irrevocably in the railroad corporation, and neither the city nor the legislature could subsequently resume possession of such railroad property without the consent of the railroad corporation.
Thus in the case of The People v. O'Brien, 111 N. Y., 88 ; 19 N. Y. State Rep., 178, Ruger, Ch. J., says: “The title to the streets of New York is vested in the city in trust for the people of the state, but, under the constitution and statutes, it had' authority to convey such title as was necessary for the purpose to corporations desiring to acquire the same for use as a street railroad. The city had the authority to limit the estate granted either as to the extent of its use or the time of its enjoyment, and also had power to grant an interest in its streets for public use in perpetuity which should be. irrevocable.’’
*569 Whatever interest, therefore, the city of Mew York had in the streets, whether as owner of the fee of the street, or as owner of abutting property, it had power to grant to the defendant for this public use, and the consent of the city to the use of Third avenue by the defendant operated as a grant of so much of the interest of the city in the street as was necessary for the construction, maintenance and operation of defendant’s railroad, and the railway company by such grant took an estate in the street People v. O'Brien, 111 N. Y., 40; 19 N. Y. State Rep., 173.
It would be entirely inconsistent with this grant made by the city to the company for the city to thereafter prevent the corporation from building its railroad because by the construction of the road the property of the city in the street would be appropriated. By its consent to build the road it had granted to the railroad company so much of its property in the street as was necessary for the maintenance and operation of the railroad.
If a private person had owned both the street and the abutting property, and had by grant authorized the railroad company to erect its structure and operate its road, it is clear that such consent would include the use of the easement in the street that was ap.purtenant to the abutting property, as well as so much of the fee of the street as was necessary for the construction and operation of its road, and I can see no reason why the same rule should not apply to property owned by' the city, when the city has authorized the construction of the road under legislative authority.
When the city, made its conveyance to plaintiff’s grantor, it could convey only such rights in the street as it had at the time of its conveyance, and subject to the rights of the railroad company theretofore acquired, and as the railroad company’s possession of the street at the time of the conveyance was open and notorious, I think the grantee -took with notice of the right that had been granted by the city to the railroad company.
The proceedings of the rapid transit commissioners in respect to the elevated railroads in the city of Mew York, and the resolution of the common council giving the consent to the construction of the road, were introduced in evidence by defendants, and by such proceedings and co nsent it appears that the consent of the local authorities applied to that portion of the road in front of the premises in question.
I think, therefore, that the property in Third avenue, acquired by the plaintiff by their conveyance of the abutting property, was subject to the úse of the street by defendant, and that no property of plaintiff has been or is appropriated by defendant, and it follows that defendant is entitled to judgment, with costs.