## The City of New York, Plaintiff, v. The Hudson and Manhattan Railroad Company, Defendant.

First Department, June 13, 1919.

**Corporations — franchise of railroad corporation to construct and maintain subway with exits in city of New York — liability for cost of reconstruction of subway exits caused by subsequent widening of streets by city — police power.**

Where a railroad company, holding a franchise granted by the State, acting through the board of rapid transit railroad commissioners under the authority of section 32 of chapter 4 of the Laws of 1891, as amended, to construct and operate a subway and exits with their kiosks located on the sidewalks between the curb line and the building line of certain streets, constructed said subway and exits in accordance with plans approved by the rapid transit commissioners and the city authorities, and thereafter the city, with knowledge of said construction, widened the street and narrowed the sidewalk necessitating a change in the subway entrances, it is liable for the expense of the relocation and reconstruction of said exits with their kiosks, under a contract made by it with the railroad company under which it agreed to pay the expense in the first instance, and the final liability should be determined by submitting the question to the Appellate Division.

The issuance of the certificate to the railroad company under statutory authority by the board of rapid transit commissioners, the consent of the city authorities, the acceptance by the company and the performance of all conditions precedent, constituted a contract and conferred upon said company an irrevocable franchise, and it thereby acquired property rights held in perpetuity.

Said franchise was granted by the State in the exerc se of its sovereign power.

The police power under which the State may affect franchise rights is an attribute of sovereignty to be exercised only by it or its agents to which such power has been delegated

No delegation of police power sufficient to authorize the city to compel the relocation of the subway exits at the expense of the railroad company is shown in this case.

Submission of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*John F. O'Brien* of counsel [*Terence Farley* with him on the brief; *William P. Burr, Corporation Counsel*], for the plaintiff.

*Lansing P. Reed* of counsel [*Harold W. Bissell* with him on the brief; *Stetson, Jennings & Russell*, attorneys], for the defendant.

CLARKE, P. J.:

The defendant is a railroad corporation organized and existing pursuant to the laws of the States of New York and New Jersey formed by an agreement of consolidation between the New York and Jersey Railroad Company, the Hudson and Manhattan Railroad Company and the Hoboken and Manhattan Railroad Company.

The board of rapid transit railroad commissioners for the city of New York by a certificate dated February 2, 1905, granted to the said New York and Jersey Railroad Company in perpetuity the right and franchise to lay down, construct and operate its road from the intersection of Greenwich and West Tenth and Christopher streets in the borough of Manhattan, under Christopher street to Sixth avenue; thence with one branch under Sixth avenue to a terminal station at or near the intersection of Sixth avenue and Thirty-third street and to build, maintain and operate subway stations and the necessary track connections therewith under Sixth avenue at or near its intersection with Fourteenth, Eighteenth, Twenty-third and Twenty-eighth streets, which avenues and streets are public highways in the city of New York. The title to said avenues and streets is held in fee by the city. The defendant company by the agreement of consolidation assumed all the obligations of the New York and Jersey Railroad Company under the said certificate and succeeded to all its rights and franchises and is now the owner of all the rights and franchises set forth in said certificate. All the terms, conditions and requirements, subject to which the franchises and rights as set forth in above-stated certificate were granted having been duly performed and complied with, the board of rapid transit railroad commissioners granted to the defendant a certificate dated February 28, 1907, modifying the certificate dated February 2, 1905, which said modifying certificate provided in part as follows:

" The Hudson and Manhattan Railroad Company shall have the right to construct and maintain exits from the tunnel at the surface of the following streets, viz.: Fourteenth Street near the westerly side of Sixth Avenue, Twenty-third Street near the westerly side of Sixth Avenue, Twenty-eighth Street near the easterly side of Sixth Avenue, Twenty-eighth Street near

the westerly side of Sixth Avenue; provided that the same shall be constructed in substantial accordance with the drawings or plans submitted to the Board by the said Company."

Pursuant to the terms of said amended certificate exits with covered shelters known as kiosks were constructed by the defendant at the intersection of Fourteenth street and Sixth avenue and at the intersection of Twenty-third street and Sixth avenue in accordance with the drawings or plans submitted to the board of rapid transit railroad commissioners by the defendant, which plans were approved by the said commission. Said exits with their kiosks were located on the sidewalks on Fourteenth street and Twenty-third street respectively, between the curb line and the building line of said respective streets, there being two at each of these aforesaid streets located west of Sixth avenue, one each being on the northerly sidewalk and one each on the southerly sidewalk. All such exits are equally entrances by stairways to and from the streets and the subway stations underground for the use and convenience in both directions of passengers, and such open stairways are covered by shelters described as kiosks. Subsequent to the construction of the aforesaid described exits and on or about March 9, 1911, the board of estimate and apportionment adopted a resolution directing the removal of encroachments on and changing the roadway and sidewalk width of Twenty-third street between Second and Eighth avenues and on or about May 25, 1911, the board of estimate and apportionment adopted a similar resolution with regard to widening Fourteenth street between Third and Sixth avenues, and on or about July 6, 1911, adopted a similar resolution with regard to widening Fourteenth street between Sixth and Seventh avenues. On or about April 6, 1911, the board of estimate and apportionment approved the issuing of corporate stock of the city of New York to an amount not to exceed $400,000 to provide means for widening, regrading, repaving and recurbing and otherwise improving the roadways of various streets in Manhattan, including Fourteenth street and Twenty-third street and for moving and replacement of subway entrances and for other expenses incidental to such widening, and on April 18, 1911, the board of aldermen by ordinance approved and concurred in said resolution.

Subsequently the acting president of the borough of Manhattan in writing advised the defendant that the widening of the roadways of the above streets in conformity with said resolutions would necessitate the removal and relocation of the said exits of the subways of the defendant at Fourteenth and Twenty-third streets and Sixth avenue and notified the defendant to make arrangements for the removal and relocation of the said exits with their kiosks of its station structure at said points.   The defendant notified the president of the borough of Manhattan in writing that the rights of the company to maintain the said exits with their kiosks could not be disturbed by the city without the consent of the defendant but that the defendant was willing to change the position of these exits as desired by the city upon the condition, *first,* that the consent of the Public Service Commission to the making of such change be obtained, and *second,* that the cost and expense of the work should be borne by the city.

On or about December 19, 1911, the Public Service Commission duly adopted a resolution approving and consenting to the relocation of the exits with their kiosks of the defendant at said streets.   On the 23d of May, 1912, the plaintiff and defendant duly entered into an agreement by the terms of which the Hudson and Manhattan Railroad Company should on behalf of and for account of the city remove, relocate and reconstruct said exits with their kiosks and the city should pay the expense thereof in the first instance and the liability, if any, of the defendant to reimburse the city for the moneys expended in said change should be determined by submitting the question upon an agreed statement of facts to this court. The said agreement has been duly performed by the parties in accordance with its terms.   The expense incurred by the city and paid to the defendant for changing the location of said exits with their kiosks was $27,514.43.   The plaintiff demands judgment for said amount and the defendant demands judgment that the claim of the plaintiff be dismissed.

Attached to the submission which sets forth the above facts are the resolutions, certificates, etc., referred to therein and made part of the submission.

The certificate granted by the board of rapid transit commissioners dated February 2, 1905, authorized the defendant

" to build, maintain and operate subway stations and the necessary track connections therewith * * * under Sixth Avenue at or near its intersections with Fourteenth Street * * * Twenty-third Street, * * * together with stairways leading from such subway stations to the surface of the streets and avenues * * *." It further provided: " No exit from the tunnel at the surface shall be constructed except through private property, unless the Board, by resolution, shall specially approve of an exit or exits situated within one or more of the streets or avenues above mentioned " and " all plans for, and the method of doing, the work, including all plans for stations and station arrangements, shall from time to time be subject to the approval of the Board," and " the plan and profile of the railroad herewith attached are to be deemed a part of this franchise and to be construed with the text hereof." The franchise of the defendant was granted by the State acting through the board of rapid transit railroad commissioners under the authority of section 32 of chapter 4 of the Laws of 1891, being the Rapid Transit Act, as amended by chapter 584 of the Laws of 1902.* That statute delegated to the board of rapid transit railroad commissioners power to authorize a tunnel railroad corporation " to construct and operate any such railroad or connecting railroad under any lands, streets, avenues, * * * in the said city, with all necessary sidings, platforms, stations, facilities for access to the surface and other appurtenances * * *. The said board shall fix and determine the locations and plans of construction of the railways upon such route or routes and of such tracks and facilities * * *. A certificate shall be prepared by the said board * * * setting forth in detail the action taken and grant made by the said board with respect to such * * * route or routes and such tracks and facilities, and the terms, conditions and requirement aforesaid * * *."

Then follow provisions as to acceptance by the railroad corporation and its compliance with " such of the requirements and conditions as are necessary to be fulfilled in such cases, under section eighteen of article three of the Constitution of this State * * *. Every certificate prepared

---

* Since renum. § 23 by Laws of 1909, chap. 498.— [REP.

by the board of rapid transit railroad commissioners as afore-
said when delivered to and accepted by such railroad cor-
poration, shall be deemed to constitute a contract between
the said city and said railroad corporation, according to the
terms of the said certificate  *  *  *.  The terms of such
contract may from time to time, with the consent of such
corporation, be modified by the board  *  *  *.  But the
construction and operation of such railroad,  *  *  *  tracks,
or facilities, are hereby authorized only upon the condition
that  *  *  *  the consent  *  *  *  of the local authorities
having the control of that portion of a street or highway
*  *  *  be first obtained, provided that such local authorities
shall, upon the presentation to them of any such grant or
contract, without requiring the execution of any other agree-
ments than those herein provided for, either approve or
disapprove the same; and every such approval, shall be and
be deemed to be, free of all limitations except those contained
in this act or the Constitution of the State."

There is no doubt, and the plaintiff concedes, that the
issuance of the certificate under statutory authority by the
board of rapid transit commissioners, the consent of the
city authorities, the acceptance by the company and the
performance of all conditions precedent constituted a contract
and conferred upon the defendant an irrevocable franchise
and that thereby it acquired property rights held in perpetuity.

In *People ex rel. Metropolitan St. R. Co.* v. *Tax Comrs.*
(174 N. Y. 417, 435) the court said: " The general franchise
of a corporation is its right to live and do business by the
exercise of the corporate powers granted by the State.  The
general franchise of a street railroad company, for instance,
is the special privilege conferred by the State upon a certain
number of persons known as the corporators to become a street
railroad corporation and to construct and operate a street
railroad upon certain conditions.  Such a franchise, however,
gives the corporation no right to do anything in the public
highways without special authority from the State, or some
municipal officer or body acting under its authority.  When
a right of way over a public street is granted to such a cor-
poration, with leave to construct and operate a street railroad
thereon, the privilege is known as a special franchise, or the

right to do something in the public highway, which, except for the grant, would be a trespass."

In *Lord* v. *Equitable Life Assurance Society* (194 N. Y. 225) the court said: " The charter of a corporation is the law which gives it existence as such. That is its general franchise, which can be repealed at the will of the Legislature. A special franchise is the right, granted by the public, to use public property for a public use, but with private profit, such as the right to build and operate a railroad in the streets of a city. Such a franchise, when acted upon, becomes property and cannot be repealed, unless power to do so is reserved in the grant, although it may be condemned upon making compensation."

A somewhat similar question to that at bar was presented in *Manhattan Railway Company* v. *Mayor* (89 Hun, 429) on a submission of a controversy on an agreed statement of facts. The city was the owner of the bed of Eighth avenue. It consented to the erection of the elevated railway and appurtenances and stations in that avenue. Thereafter the Legislature authorized the city to erect and construct over and along One Hundred and Fifty-fifth street from the easterly line of St. Nicholas place to MacComb's Dam bridge, an elevated roadway, viaduct or bridge. (Laws of 1887, chap. 576.) The grade of the viaduct crossed Eighth avenue at such a height as to intersect the upper portion of the plaintiff's iron stations at that point. In order to permit the viaduct to pass over the stations so as not to seriously impair their usefulness or weaken the structure to the point of danger to the traveling public extensive alterations became necessary involving an expenditure of $9,960. Between the plaintiff and defendant there was a dispute as to which party should bear the expense. To avoid the delay in the construction of the viaduct, which a suit to determine that question would occasion, an agreement was made which permitted the work to be done at once, leaving the question of liability for the determination of the court. On this submission it was agreed on the one hand that the plaintiff had the right to erect and maintain its stations where it did, and on the other hand that the viaduct was lawfully built where it was erected under the authority of the statute already referred to. Mr. Justice PARKER, writing for the General Term,

said: " The mere statement of the fact that structures, such as the plaintiff's stations, lawfully erected, and with the full consent of the defendant, were by its act damaged, would seem to establish the right of the owner to compensation. If the stations had been erected on plaintiff's land instead of in a public street, and the defendant had truncated them with a viaduct, there would be no question of its right to compensation for the damage done. The fact that its erection is upon and over a street of the defendant, in view of the defendant's consent given pursuant to legislative authority, and for the purpose of inducing the plaintiff to construct and operate an elevated railway for the convenience of the public, does not seem to present a situation different from what it would be if the stations were upon lands belonging to the plaintiff. The steps taken by the plaintiff and the defendant, pursuant to legislative authority, leading up to the construction of the railway and its appurtenances, do not indicate that it was the intention of any of the parties that the plaintiff's right to maintain the structure should be of such a conditional character that the Legislature might, by subsequent enactment, authorize the destruction of the whole or any part of it without just compensation. It was not laid out and constructed, like the ordinary railroad, by a corporation created under the General Railroad Act (Chap. 140 of the Laws of 1850), with little if any of its line definitely located, but with the machinery provided whereby it might acquire private property, and the right to cross public streets and the tracks of other railroads. Instead, its promoters presented a plan which was intended to prevent interference to any great extent with the public use of the streets, by constructing the railroad bed so far above the streets as to make it impossible for the structure to interfere with traffic on the avenue. The general scheme proved acceptable to the defendant and the Legislature, the latter body providing the necessary safeguards for the construction of elevated railways, of which the plaintiff's is one. Under what is known as the Rapid Transit Act (Chap. 606, Laws of 1875) commissioners were appointed who subsequently organized the plaintiff, according to the terms of the statute authorizing their appointment. They prepared the articles of association and specified the routes and framed a general

specification relating to the construction of supports, turn-outs, stations, platforms, etc., under which all of the stations of the plaintiff, including the one in question, were located and constructed. With reference to that plan of construction and under the guidance and direction of the commissioners, the plaintiff proceeded to and did expend large sums of money, resulting in the completion of the property in accord with the methods prescribed by legislative enactment, and under the direction of officials representing the defendant. Certainly, the rights so acquired and the property thus created cannot be defeated and destroyed for the benefit of the defendant without compensation. (*People* v. *O'Brien,* 111 N. Y. 1.) And it would seem to be equally true of a part as of the whole."

After referring to *Herzog* v. *New York Elevated R. R. Co.* (14 N. Y. Supp. 296; affd., 76 Hun, 486) the court said: " The argument of the court fully sustains the proposition we have asserted in this case, to wit, that the plaintiff has such a property right in the elevated railroad and structure that the city cannot physically interfere with it, even under the sanction of legislative authority, without responding for the direct damage which such interference occasions to the plaintiff. The Legislature has the power, from time to time, to authorize the construction of viaducts, bridges and other structures for the public use, which shall cross the plaintiff's roadbed and appurtenances, but if such crossing shall necessarily put the plaintiff to expense in the rebuilding, repairing or strengthening of its structure it may have compensation therefor." And judgment was given for the plaintiff.

Cases in other States are cited and relied upon by the plaintiff. In my opinion, the question at issue is settled for this court by controlling decisions of the Court of Appeals. There can be no dispute but that the franchises of a corporation are granted by the State in the exercise of its sovereign power. This is true not only of the franchise to be a corporation but of the so-called special franchise which becomes perfected in the case of corporations occupying the streets of the city for rail-road purposes by the consent of the local authorities.

In *New York Central & H. R. R. R. Co.* v. *City of New York* (142 App. Div. 578; affd., 202 N. Y. 212) the action was brought to enjoin the city from enforcing a resolution of the

board of estimate and apportionment directing the president of the borough of Manhattan to remove the plaintiff's tracks from certain streets and avenues within the city.   In sustaining an injunction, this court said: " The State has not questioned the right of the plaintiff to exercise the franchise which was granted to the Hudson River Railroad Company, and which was concededly a legal franchise, and, as I understand the settled law of this State, it is the State only that can question the right of a corporation to exercise a franchise granted by the State."

The Court of Appeals, after reciting the legislation under which the Hudson River Railroad Company was consolidated with the New York Central Railroad Company, and the transfer to the consolidated company of the rights, privileges and franchises theretofore granted, said: " We see no escape from the conclusion that by means of this enactment [referring to the act authorizing consolidation] and the proceedings thereunder the Legislature transferred to the plaintiff the franchise in the New York city streets which it had originally bestowed upon the Hudson River Railroad Company in 1846.   That franchise, it must be borne in mind, proceeded from the State and not from the city.   At that time, the authority of the Legislature over the streets of a municipality was not subject to the constitutional restrictions which now exist.   The Legislature chose to make the location of the tracks in the streets of New York dependent upon the assent of the municipal corporation, but it was not under any legal obligation to do so; and the fact that it did so, gave the city no authority to withdraw or cancel the franchise after it had once been made effective by the city's consent.   Assuming the existence of that power in any one, it belonged and still belongs to the Legislature and not to the corporation of the city of New York. (See *City of New York* v. *Bryan,* 196 N. Y. 158.)   *   *   *   The right of the respondent to resist the attempt of the city to compel the removal of its tracks in the absence of any action to that end on the part of the State is clear, whatever may be the power of the Legislature in the premises."

It is also settled that, in the exercise of its taxing power and its police power, both attributes of sovereignty, the State can, to a certain extent, affect the franchise right which it has

granted. The plaintiff invokes in its aid the police power; but that, as pointed out, is an attribute of sovereignty to be exercised only by the State, or the agents of the State, to which such power has been clearly delegated.

This proposition has been illustrated in four recent cases. In *Village of Carthage* v. *Central N. Y. Tel. Co.* (185 N. Y. 450) the village of Carthage undertook to compel a telephone company to put its wires under ground and to remove its poles erected on the streets. The Court of Appeals said: " It has long been the settled law of this State that telegraph and telephone companies derive the right to erect their poles and string their wires directly from the State. * * * Our attention is called to certain general provisions of the charter of the village of Carthage, which do not in terms refer to the subject under consideration, from which it is argued that it can be implied that the Legislature has delegated to the village the power to compel telegraph and telephone companies to place their wires underground. We are of opinion that, while it is competent for the State to delegate its sovereign power to cities and villages in regard to the construction, management and control of these companies, such surrender of sovereignty cannot be implied, but must rest on express legislation containing a clear and unqualified grant of power." Holding that there had been no such delegation of power, it sustained an order vacating an injunction against the telephone company. In *People ex rel. City of Geneva* v. *Geneva, W., etc., Traction Co.* (112 App. Div. 581; affd., 186 N. Y. 516) section 65 of the charter of the city of Geneva provided as follows: " If any street, section of a street, public place or square, in which a street surface railroad is now or shall be hereafter operated, shall be paved, repaired or macademized, or any such street straightened, widened or altered, the board of public works shall have power to require the railroad corporation operating such street surface railroad to change its grade and line to conform to such alteration or improvement in such manner as said board shall designate, and the corporation operating such street surface railroad shall, at its own expense, change its line and grade to conform to such direction as the board of public works may make. Nothing herein contained shall be held to relieve any such railroad

corporation from paying its share of the cost of such improvements, as provided by this act." (Laws of 1897, chap. 360, § 65, as amd. by Laws of 1905, chap. 462.)

The court held that under such direct statutory authority the city was authorized to require a relocation of the street surface railroad at its own expense.

In *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.* (214 N. Y. 527), which was a proceeding to compel the defendant street railway corporation to remove its tracks from the side to the center of a street in the city of Olean in accordance with a resolution of the common council, Judge Miller, writing for the Court of Appeals, said: "A railroad derives its franchise from the State * * *. No doubt the consent of the local authority may be withheld or granted on specified conditions, but when given, the special franchise, so called, becomes property protected by the Constitution and, except for conditions attached to the consent, subject to regulation only under the police power. (*People* v. *O'Brien*, 111 N. Y. 1; *Ingersoll* v. *Nassau Electric R. R. Co.*, 157 N. Y. 453.) No doubt, to promote the public convenience the Legislature may compel the defendant to relocate its tracks. [*People ex rel. City of Geneva* v. *G., W., S. F. & C. L. Traction Co.*, 186 N. Y. 516. And see *City of Rochester* v. *Rochester Railway Co.*, 182 N. Y. 99; *Chicago, Burlington & Quincy Railway* v. *Drainage Comrs.*, 200 U. S. 561.] However, the police power resides in the State Legislature, and may be exercised by local bodies only to the extent that it has plainly been delegated. In the *City of Geneva* case the city charter expressly authorized the board of public works to require a street surface railroad to change the location and grade of its tracks to conform to any improvement or alteration in the street. There has been no such express delegation of power to the city of Olean * * *. The power to change the grade of a street may fairly be said to involve the power to compel a street railroad to lower or raise its tracks to conform to the new grade; but the power to require a relocation of the tracks does not appear to be necessary to the exercise of the power to alter and improve streets. Certainly the necessity is not so plain that it can with any certainty be said to have been con-

templated by the Legislature * * *. But mere convenience is not enough to give rise to the implication of delegated power."

The clause in the charter there relied upon by the city and held not to be a delegation of sufficient police power to authorize a relocation was as follows: " Power to discontinue, lay out, widen, open, alter, change the grade or otherwise improve roads, avenues, streets," etc. (See Laws of 1893, chap. 478, § 93. Amd. by Laws of 1898, chap. 142.)*

In *People ex rel. City of New York* v. *New York Railways Co.,* 217 N. Y. 310), where the city undertook to compel the railroad company to relocate its surface tracks on Eighth avenue, after stating the question for determination as follows: " Has the appellant been vested with the governmental or police power to compel the defendants to change the track from its present to another place upon the street or avenue upon the ground of public safety and convenience? " the court said: " The part of Eighth avenue involved in this proceeding, that is, from Fifty-ninth street to One Hundred and Tenth street, was within the route of the railroad to be built and operated by the company as fixed in the incorporating certificate. The certificate did not fix the locations of the railroad tracks upon the streets of the route. * * *

" In 1913 the appellant, by its board of estimate and apportionment (Charter, § 242),† caused the roadway and sidewalks of Eighth avenue, at the point in question, to be changed in plan and construction, and in 1915, through its board of aldermen, demanded, upon the ground of public safety and convenience, that the company relocate one of its tracks. This proceeding is to compel compliance with the direction. We decide that the direction is *ultra vires* of the appellant.

" A railroad can be constructed and operated upon a public street or highway only upon the consent of the people acting through the Legislature. The title to the streets and highways, whether in the people or a municipality, or in fee or in

---

* See Laws of 1915, chap. 535, §§ 91, 98.— [REP.

† Laws of 1901, chap. 466, § 242, as amd. by Laws of 1905, chap. 629. — [REP.

easement, is held for the public use.  The fee of the streets acquired by the city of New York is held by it in trust for the use of all the people of the State and not as corporate or municipal property.  The power of the Legislature in respect to them is qualified by the Constitution alone.  For ordinary and general transportation and traffic, the streets and highways are free and common to all citizens.  Thus much is conclusively implied in their acquisition and maintenance, and their regulation for such purpose is, speaking generally, imposed upon the local municipal authorities.  The construction and operation of a railroad upon a street is not within that purpose. It is the occupation of a part of the street with privately-owned permanent structures, the operating of cars and the transportation of persons thereon for fares or tolls.  It is the use of the street for a distinct and exclusive purpose.  It is the exercise of an exclusive interest in or appropriation of the street.  The authorization of it is one of the prerogatives of sovereignty and derivable only through the action of the Legislature.  * * *  The Legislature may, unless forbidden by the Constitution, delegate to a municipality, or an agent for such purpose, the power to authorize it, but the delegation must be in clear and unmistakable language.  It does not exist through avoidable implication.  Authority to regulate the use of the streets will not constitute it.  * * *  Under established principles and the authorities, the construction and operation of a railroad upon a street is an appropriation or alienation of the part of it so occupied for a purpose extraordinary and distinct from highway purposes and can be authorized by municipal authorities only through a clear right given by the Legislature.  The authorization to regulate the use of the streets does not contain or confer the right; it does not empower the authorities of the city of New York to locate upon the streets the route or the tracks of a railroad or to participate in any way in creating, defining or controlling the franchise granted by the State.  In so far as it is concerned, the practical location of railroad tracks upon the streets, and the parts of the streets to be appropriated in their use is a matter between the State and the railroad corporation.  By virtue of the implied legislative intention, the tracks of the Eighth Avenue Railroad Company were to be located, in the

absence of a specific location by the corporate charter, with a proper regard to the public convenience and safety, but a violation of this implied obligation could be corrected by the State and not by the municipality. The State might under the police power require relocation. * * * Equally true is it, and for identical reasons, that the authority to the board of aldermen to regulate the use of the streets does not empower it to appropriate to the occupation and use by the respondents, by a relocation of the track in question, a part of the street other than that upon which their tracks have been lawfully constructed. It does delegate to it police power enabling it to reasonably control in divers ways the care of the railroad structures upon the streets and the operation of the cars upon them. The judicial decisions uphold many instances of such control. The rights of a railroad corporation upon the parts of the streets appropriated to its use must be so exercised that the free use of the streets, for the purposes and in the modes inherent in their creation, will not be unreasonably interfered with. It is a part of the regulative power of the local authorities to secure such result. * * * The assent did not reserve to the city the power to withdraw or cancel it or impose as a condition the right to the city to direct a relocation of the tracks. Neither the General Railroad Law, nor the charter of the city, nor other statute empowers the city to recall the assent or enacts that it shall be continuous. It having been given, the purpose of the statute was fulfilled. The company accepted and acted upon it and henceforth it was binding upon the city. Under the statute making the exercise of the franchise dependent upon it, the city could not relocate the tracks in order that they should be where they desired."

The case at bar is stronger for defendant than the case just cited. Here there is a permanent underground and costly construction. The location was in accordance with plans adopted as part of the contract, approved and consented to by the rapid transit commissioners and the city authorities. After location and construction the city with knowledge of the existing situation widened the street and narrowed the sidewalk. Fair play requires it to pay for changes caused by its belated determination to widen the roadway.

I think there was a definite contract, a consent irrevocable in its nature, and a location by the public authorities, such as to constitute property in defendant which could not be taken from it without the just compensation required by the Constitution (Art. 1, § 6) save in reliance upon the police power. No delegation of police power sufficient to authorize the city to compel the relocation at the expense of the defendant is shown. I think the defendant was clearly within its rights and that its consent to make the change required provided the city would pay therefor was based upon a valuable consideration; that under the terms of the agreement the city is required to pay the expenses for the removal and change which by its own action it made necessary; and, therefore, judgment should be for the defendant dismissing the claim of the plaintiff, without costs, as provided in the submission.

LAUGHLIN, SMITH, MERRELL and PHILBIN, JJ., concurred.

Judgment ordered for defendant dismissing the claim of the plaintiff, without costs. Order to be settled on notice.